### HAWKINS et al. v. LONE STAR INS. UNION.

(Court of Civil Appeals of Texas. Ft. Worth. March 30, 1912. Rehearing Denied April 27, 1912.)

1. INSURANCE (§ 750*) — MUTUAL BENEFIT INSURANCE—FORFEITURE OF POLICY — NONPAYMENT OF ASSESSMENTS.

The owner of a policy in a mutual benefit association, which declared by the by-laws printed on its face that a failure to pay assessments within 15 days after notice would forfeit the policy, and that no agent was authorized to waive any of its provisions or conditions, who was duly notified of an assessment and failed to pay the amount thereby forfeited his rights under the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1895, 1896, 1903; Dec. Dig. § 750.*]

2. INSURANCE (§ 755*) — MUTUAL BENEFIT INSURANCE—FORFEITURE OF POLICY—NONPAYMENT OF ASSESSMENTS—WAIVER OF FORFEITURE.

A forfeiture of a mutual benefit policy for nonpayment of assessments is not waived by notices of subsequent assessments, nor by a letter from the general office, calling attention to the failure to pay assessments and inviting insured, if in good health, to pay arrearages and be reinstated, where such notices and invitation were sent under a custom of the insurer and as a courtesy to those whose policies had been forfeited, and were not intended as an invitation to pay up arrearages and be reinstated, regardless of condition of health, and where the insured took no steps towards reinstatement while in good health.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1907–1916; Dec. Dig. § 755.*]

3. INSURANCE (§ 756*) — MUTUAL BENEFIT INSURANCE—FORFEITURE BY NONPAYMENT OF ASSESSMENTS—NOTICE TO GIVE EFFECT TO FORFEITURE.

A policy in a mutual benefit association, which shows the by-laws on its face to the effect that a failure to pay assessments within 15 days after notice thereof will avoid the policy, is notice to the insured of the conditions as to payment of assessments required in order to maintain his membership and keep his policy alive.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1917, 1918; Dec. Dig. § 756.*]

4. INSURANCE (§ 760*)—MUTUAL BENEFIT INSURANCE—FORFEITURE BY NONPAYMENT OF ASSESSMENTS—REINSTATEMENT.

A policy in a mutual benefit association, forfeited by a failure of the insured to pay assessments, was not revived by an unaccepted tender of the arrearages, made in behalf of insured at a time when it was known that he could not live.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1923; Dec. Dig. § 760.*]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Mary M. Hawkins and others against the Lone Star Insurance Union. Judgment for defendant, and plaintiffs appeal. Affirmed.

L. V. Reid and J. H. McMillan, both of Comanche, for appellants. Smith & Palmer, of Comanche, for appellee.

DUNKLIN, J. Mary M. Hawkins instituted this suit to recover of the Lone Star Insurance Union the amount specified in a life insurance policy issued by the defendant to Jesse Hawkins, and from a judgment in favor of the defendant the plaintiff has appealed.

The principal defense urged to the suit was that the policy had become void before the death of the insured by reason of his failure to pay the assessments thereon required by the contract of insurance. The trial was without the intervention of a jury, and the trial judge filed his conclusions of fact and law, which are as follows:

"(1) As to the facts, the court finds that the defendant association is a fraternal mutual benefit association, doing business under the laws of the state of Texas, and that it

has no capital stock, and depends exclusively upon assessments made upon its members to pay death benefits, and that under its organization it is without power to pay any death benefit, except by the voluntary payment by its officers, acting under its by-laws.

"(2) That about the 7th day of July, A. D. 1909, the defendant association issued to Jesse K. Hawkins a policy upon his life, naming the plaintiff, as beneficiary therein, to an amount not exceeding $1,000.

"(3) That on the 26th day of October, A. D. 1910, said Jesse K. Hawkins died. That the defendant declined to pay to Mary M. Hawkins any part of said policy, and denied all liability thereon.

"(4) That the by-laws of the defendant association were printed in the face of the policy sued on. That, among other provisions, said by-laws contains the stipulation that it should have no force or effect until first signed by the member to whom the policy was issued; and I find that said Jesse K. Hawkins did sign said policy as provided. That by the terms of said policy it was provided that same was issued subject to the terms, conditions, and stipulations of its by-laws, a compliance with which was by said policy made a condition precedent to any right under said policy, and providing that no officer or agent of the association, or any member thereof, should have power to waive any provision or condition of the by-laws, and that no person should be held to be an agent, unless duly authorized in writing. That said by-laws, as printed in the face of the policy sued on, provide, among other things, any member failing to pay any part of the assessments and annual dues provided for in the by-laws within 15 days after mailing notices thereof shall thereby forfeit membership, and shall be dropped from the class or divisions of which he was a member and from the Union, but further providing that, should a suspended member personally appear and apply for reinstatement within three months from the date of his suspension, and pay all arrearages, if in good health, he should be restored to membership, and his policy again become valid. And further providing that if a notice of assessment is left at or mailed to the member it should be sufficient notice to the member, and that the association should not be held responsible for any failure on the part of any division or its officers to perform any of the duties enjoined by the by-laws, and providing that all persons dealing with the company should be bound by the by-laws. That the amount of each assessment upon the death of a member was by the by-laws fixed at $1.10, $1 of which went into the mortuary fund and the 10 cents into the expense fund of the association.

"(5) That about the 26th day of May, A. D. 1910, the defendant by its proper officers made an assessment No. 35 of $1.10 upon its members to pay a death loss, as provided in its by-laws, and the general secretary of the association mailed notices of said assessment to the members, which notice was mailed to and duly received by said Jesse K. Hawkins. That said Jesse K. Hawkins failed and declined to pay said assessment within the time provided in said by-laws, and never paid same or tendered same to the defendant, and same was never paid, except as hereinafter stated. That about the 1st day of July another assessment No. 36 was duly made to pay death benefit. That about the 3d day of August another assessment, No. 37, for death loss was made. That in the month of October, 1910, still another assessment was made for the same purpose, and that the notice was mailed to the members of each of said assessments of $1.10. Each and every notice thereof was also mailed to said Jesse K. Hawkins and was duly received by him. That about the——day of October, 1910, the general secretary at Paris, Tex., mailed to said Jesse K. Hawkins, and that he duly received, a printed form of letter, signed by said general secretary, notifying said Jesse K. Hawkins of the fact that he failed to meet assessments Nos. 35 and 36 and 37, and inviting him, if in good health, to pay up all arrearages, and be reinstated in the Union. That on the 25th day of October, H. T. and W. B. Smith, who were relatives of the said Jesse K. Hawkins, at the instance of plaintiffs, presented to B. J. Pittman, at De Leon, Tex., the sum of $4.30, with the statement that same was for the purpose of reinstating said Jesse K. Hawkins in the Union, and with the statement that said Jesse K. Hawkins was then very sick, and that said Pittman declined to accept the same for the defendant association, but agreed that he would send the same to the home office, with a statement as to said Jesse K. Hawkins' condition, and see what the association would say about reinstating said Jesse K. Hawkins, if it was desired, at same time stating that he was sure it would do no good to send it, and it was agreed by said H. T. and W. B. Smith that said Pittman send same to home office, with the understanding that a statement showing said Jesse K. Hawkins' condition accompany same, to see what action the defendant would take in the matter. That said Pittman declined and did not give any official receipt for same, but sent same, less $1.10, to the home office, with the letter stating that said Jesse K. Hawkins was then very sick, and suggesting that the company advise him. That immediately the general secretary returned said remittance to said Pittman, declining to accept the same, and said Pittman advised plaintiff M. Hawkins that the company declined the money, and declined to reinstate said Jesse K. Hawkins. That said Pittman was authorized by the defendant, as local agent at De Leon, to collect and remit to the home

office assessments and issue official receipts therefor, where members preferred to pay that way, rather than to remit themselves direct to the home office; and said Pittman was authorized to so act for the convenience only for members. That said Pittman was only authorized to collect and receipt for assessments and dues of the members, and had no authority to make insurance contracts. That in a few hours after delivery of said money to said Pittman for transmission said Jesse K. Hawkins died. That said policy sued on was issued at the home office at Paris, Tex., and under the by-laws it could only be issued at the home office. That the matter of making insurance contracts was, under the by-laws, vested in the supervisory officers of the Union at Paris, Tex., and all the affairs of the Union, under the terms of the by-laws, were vested in the board of directors, whose office was at Paris, Tex. I further find that the defendant association had no notice of the condition of the health of the said Jesse K. Hawkins until and except that given by the letter of said Pittman accompanying said remittance.

"(6) I further find that the policy sued on herein and exhibited in evidence would in no event exceed $1,000, but was in fact for that amount, and that there were about 2,000 members in the class and divisions to which assured belonged at the time of his death. That after the death of any member or members sufficient to require it an assessment on each member was made for the purpose of providing a fund for payment of future loss or death, so that in fact much as $1,000 was always on hand to pay any loss by death which might occur.

"(7) I find that Worth Duncan was the general secretary and general manager of the defendant company at all times mentioned in the conclusions, and that as such he wrote the letter to assured, exhibited in evidence in this case, which is to the tenor following:

"'Paris, Texas, Sep. 3, 1910.

"'A. 1938. Miss Jessie K. Hawkins, R. F. D. #1, De Leon, Texas—Dear Friend: We note you have failed to meet assessment No. 35, 36 and 37 and only call your attention to same as we feel that you intend to retain your membership with us by your promptness in the past. We have paid more than $100,000.00 to widows and orphans of the Lone Star since date of organization and already have in force over ten millions of insurance. The Lone Star has met the people's need, paying all claims promptly and the cost remains far below any insurance order in the world. Trusting you will make prompt remittance to cover reinstatement, if in good health, I beg to remain, Fraternally yours, Worth Duncan, Secretary. Please return this letter with your remittance.'

"I further find that on October 22, 1910, he mailed to assured the notice of assessment No. 38, which was and is the tenor following:

"'38th Assessment.                    Class A.

"'Office Lone Star Insurance Union.

"'Paris, Texas, October 22, 1910.

"'Notice is hereby given that three deaths occurred since our last assessment:

| | |
|---|---|
| Walter P. Ellis, Comanche, Texas, holder of policy No. 1635—A..... | $1,000 00 |
| Josephine Dawkins, Proctor, Texas, holder of policy No. 2099—A..... | 1,000 00 |
| James A. Smith, Deport, Texas, holder of policy No. 3332—A..... | 1,000 00 |
| Total ...................... | $3,000 00 |

"'All of these policies have been paid. This necessitates making an assessment on all class A members of $1.10 as provided for in sections 7 and 8 of the by-laws, which is now due and payable to Sterling P. Smith, treasurer, at the home office of Lone Star Insurance Union, Paris, Texas, according to section 9 of the by-laws (which provides penalty of forfeiture of policy for non-payment) it must be paid within fifteen days from date.

"'You are hereby required to pay only $1.10 for three deaths, as our extra accumulation enables us to pay $3,000.00 with one assessment. Members convenient please pay to: W. L. Brown, Sherman; M. P. Allard, Cleburne; J. A. Rushing, Walnut Springs; Julius M. Jenson, Clifton; J. R. Posey, Alvarado; S. K. Wilkerson, Venus; Wm. Peterson, Hallettsville; W. H. Davis, Comanche; L. F. Schorlemmer, Aeneckeville; A. L. Coleman, Morgan; J. C. Woodworth, Cuero; First National Bank, Whiteboro; J. P. Rogers, Hico; Joe Murray, San Antonio; H. F. Lewis, Lampassas; W. C. Barnett, Valley Mills; A. M. Edmiston, Hamilton; B. J. Pittman, De Leon; J. B. Hanes, Kaufman; J. B. Jones, Grand View; First State Bank, Deport. All others remit to this office. Send or bring this card with remittance. Lone Star Insurance Union by Worth Duncan, Secy.'

"I find that the assessments last above referred to was the fourth one since assured's default in payment of assessment No. 35. I find further that when assured received the letter in question and the notice of assessment No. 38 he was desperately sick, and fears were entertained of his death; that his illness was unknown to Worth Duncan at said time; that on the 24th day of October, 1910, acting at the instance of assured's parents, H. T. and W. B. Smith, relatives of deceased, appeared before Mr. B. J. Pittman, the local secretary and agent for defendant at De Leon, Tex., and who was authorized to receive payment of assessments, and the Smiths tendered to Pittman the money on the four assessments which had not been paid by assured, to wit, Nos. 35 to 38, inclusive. Said Pittman at first declined to receive said money, knowing of assured's illness, stating at the

time that he did not think that the company would reinstate Hawkins, as he was in bad health, and was in fact not then expected to live. At the request of the Smiths, however, he agreed to take the money and send it in to the company and explain the situation to the company, and leave the question of assured's reinstatement to the company, under the circumstances. He did so accept the money, and issued his receipt for same as follows:

"'De Leon, Texas, 10/24/1910.

"'Received of H. T. & W. B. Smith, four and 40/100 dollars, Jesse Hawkins' Assts. in Lone Star Insurance Union, Assts. Nos. 35, 36, 37 and 38. $4.40. B. J. Pittman, Secretary.'

"I find that the above form of receipt was not the one used by the company usually in acknowledging payment of assessments, but that it was issued by Pittman to show receipt by him of the money paid him; he refusing to issue receipt in regular form in use by the company. I find that when Pittman sent the money into the company it was refused on account of assured's illness, and Pittman was reprimanded for accepting same and sending it in; the manager expressing surprise that he had done so in view of assured's serious illness, the first news of which was conveyed to him by Pittman's letter containing the remittance. I find that the company promptly rejected the money so tendered and returned it to Pittman for assured, and that he placed it in the bank at De Leon to the credit of assured or his relatives, where it still remains. I find further from the testimony of deceased's father that deceased understood and had the impression, from the time he first made default in the payment of assessment No. 35, and up till the time of his death, that he was suspended from the order and had forfeited his policy, and that he never at any time took any steps to reinstate himself, nor expressed any wish or desire to do so, and that the payment of the money covering arrears in his assessments was made by his relatives, with the knowledge at the time that he could not live but a few hours, and that such payment was their act and not assured's.

"I further find that it is and was the custom of the general manager of the defendant company at all times in question in this case not to actually drop any member from its mailing list and list of membership after default in payment of any assessment, less than four in number, but that, if payment of any assessment was not made within 15 days after notice, a showing of good health was required as a condition precedent to reinstatement, but that assessment notices up to the number of four were mailed out after default was made in payment of an assessment to assured, and that after the third assessment the general manager wrote each member who had so defaulted three times a letter in the form of the one exhibited in evidence in this case, and that thereafter notice of the fourth assessment would be mailed to a defaulting member before his name was finally dropped. Mr. Duncan explained that this course was pursued as a courtesy to members, and to prevent unintentional forfeitures on account of change of address, or for other reasons, and allow defaulting members to reinstate themselves, if in good health, at any time before their names were finally dropped, if they desired to do so and could make the required showing as to health, and that, in pursuance to this custom, the notices in question and the letter referred to above were sent to assured, Hawkins; his name not actually having been dropped up to the time of his death.

[1-4] "I find that the failure of said Jesse K. Hawkins to pay assessment No. 35, under the terms of the defendant's by-laws, within 15 days from date of mailing notice of said assessment by the general secretary thereby operated to forfeit the right of Jesse K. Hawkins under said policy, and that said policy, by the very terms of the by-laws which appeared in the face of said policy, became forfeited because of his failure to pay said assessment within the time allowed him by the terms of his policy. I find that the defendant's sending out to said Jesse K. Hawkins notices of subsequent assessments did not operate as a waiver of such forfeiture; neither did the mailing to Jesse K. Hawkins the letter, of date September 3, 1910, calling his attention to his delinquencies, and inviting him, if in good health, to pay up all arrearages and be reinstated, operate as a waiver of the forfeiture of said policy; that the defendant association, in sending out such subsequent notices and sending out the letter, did so, as was its custom, as a courtesy to those who permitted their policies to be forfeited, and was not intended or understood as an invitation to pay up arrearages and be reinstated, regardless of condition of health, and, as the said Jesse K. Hawkins declined to take any steps toward paying up his arrearages and applying for reinstatement while in good health, and in fact never made any effort to pay his arrearages or to be reinstated, that he died without being a member of said association, had no rights against the Union on account of said policy, and that the by-laws being shown in the face of his policy he was aware of all the conditions required of him in order to maintain his membership and to keep his policy alive, and that he preferred and did choose to take no further benefits under his policy contract by declining to meet his assessments and otherwise complying with the condition of his policy; and that the effort of others to reinstate him, at a time when it was known he could not live, did not, under the cir-

cumstances, revive his rights under said policy."

The amount tendered to B. J. Pittman by H. T. and W. B. Smith on October 25, 1910, to reinstate the insured in appellee company was $4.40, instead of $4.30, as stated in the conclusions, which statement evidently was a clerical error and immaterial to the conclusions of law reached. In all other respects, the foregoing conclusions of fact are supported by the evidence, and with the correction noted the trial judge's conclusions of fact and law are adopted as the conclusions of this court.

The judgment is affirmed.