## MILAM COUNTY MUTUAL LIFE & ACCIDENT ASS'N v. WATSON.

### No. 7458.

Court of Civil Appeals of Texas. Austin.

June 18, 1930.

Rehearing Denied July 9, 1930.

E. A. Wallace, of Cameron, for appellant, Cofer & Cofer, of Austin, for appellee.

814

BAUGH, J.

Watson held a certificate for $1,000 insurance, issued to him by appellant, a mutual aid assessment association, in which his wife, appellee, was named beneficiary. He failed to pay his semiannual dues, which accrued on October 1, 1928, and fifteen days thereafter, under the terms of his policy, it automatically lapsed. He died on December 25, 1928. On December 28, 1928, the secretary of appellant, without knowledge of his death, mailed at Rockdale, Tex., a notice addressed to Watson at Austin, Tex., of assessments for two deaths occurring prior to December 20, 1928. The records of the association then showed that Watson was delinquent. On December 29, 1928, Mrs. Watson, who was then in Rockdale, personally notified the president of the association of the death of her husband, inquired about his policy, was informed that Mr. Watson's policy had lapsed for nonpayment of dues, and that the association denied liability. Mrs. Watson thereafter returned to Austin and there found the notice of assessment sent out by the secretary to her husband on December 28th. She took same to her attorneys, and they sent for her on January 4, 1929, the $2.20 called for in said notice to the Rockdale State Bank, one of the depositories of appellant designated in said notice. Contrary to instructions to it by·appellant, said bank accepted the check sent by the attorneys for Mrs. Watson, passed same to the credit of the association, and said money was thereafter paid out by appellant on claims against it. When served with citation in March, 1929, reciting that said assessments had been paid to and retained by appellant association, it immediately returned said amount to Mrs. Watson by registered mail, which tender she refused to receive. Tender was also made in the pleadings and into court. Under the facts above recited, the trial court concluded that appellant, " * * * by sending the notice of the assessments for the prior deaths and the acceptance of the money on said assessments and the retaining of such money and the use of such money in the payment of said claims did unequivocal acts inconsistent with the forfeiture of deceased's certificate, which recognized the existence of such certificate in full force, and that said acts waived the forfeiture and showed an intention upon the part of the defendant association not to rely upon such forfeiture."

It is admitted that because of Watson's failure to pay his dues, which accrued October 1, 1928, forfeiture of his policy became absolute on October 16, 1928. It likewise appears that nothing had been done by the association prior to the death of Watson on December 25th, which would in any manner constitute a waiver, or indicate any intention on the part of the association to waive such forfeiture. At the time of his death, there-fore, the beneficiary had no right of recovery whatever against the association based upon her husband's policy or upon any prior acts or conduct of the association. These facts and circumstances distinguish this case from each and all of those cited and relied upon by appellee to fix liability on appellant association. In each of those cases either the insured was living at the time of the acts relied upon as constituting a waiver occurred, or the insured had done some specific act or pursued a course of conduct prior to the death of the insured, which the courts have held constituted a waiver of forfeiture.

■ In this case liability must depend entirely upon what transpired after Watson's death in connection with a policy or certificate which, up to the time of his death, imposed no liability. Two acts are relied upon. First, the mailing out on December 28th of notices of assessment to Watson, when appellant's records showed that he was delinquent. This was done, however, without any knowledge by appellant that Watson, the insured, was then dead. Without this knowledge such acts by the association did not constitute a waiver of the previous forfeiture. Kansas City Life Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 709; Horstmann v. Life Ins. Co., 194 Mo. App. 434, 184 S. W. 1164; Hawkins v. Lone Star Ins. Union (Tex. Civ. App.) 146 S. W. 1041, 45 C. J. 138; 19 R. C. L. 1243–1246.

■ Appellee especially relies on the cases of Equitable Life v. Ellis, 105 Tex. 526, 147 S. W. 1152, 1153, 152 S. W. 625, a leading case by our Supreme Court; Calhoun v. Maccabees (Tex. Com. App.) 241 S. W. 101; and Bailey v. W. O. W., 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876. We had the same issue before us in Stone v. Brady Mutual Life Ins. Ass'n, 2 S.W.(2d) 538. In all of those cases, as above stated, some act or course of conduct of the insurer prior to the death of the insured was·involved. The essential element of waiver is the voluntary relinquishment of a known right. We cannot agree with appellee that, because appellant association knew that Watson's policy had lapsed on October 16th, knowledge as to whether he was dead or living on December 28th became wholly immaterial. On December 25th the deceased had no policy with appellant and no rights against it. The notice of December 28th was mailed on the assumption that Watson was alive. The rights of the association were very materially affected by his death.. Had he then been alive the association was not required to reinstate him, even after sending said notice. And even if he had been alive at that time, and had, instead of being killed on December 25th, on that date become totally disabled, a contingency also insured against in his lapsed policy, and, had thereafter been reinstated, he could not have recovered anything for such

injuries as he received during the time he was delinquent. 45 C. J. 131.

[3, 4] The second act relied upon to constitute a waiver of forfeiture was the retention and use by appellant of the assessments paid on January 4, 1929, until after suit was filed. The trial court found that the association knew at the time that said assessments had been paid to the Rockdale State Bank and credited to its account; and that it thereafter retained and used same to pay death claims against it. The trial court obviously made this finding on the ground that the association, having designated said bank as a depository to which payment of such assessments could be made, was charged with knowledge of its acts. That is, that knowledge of the agent is imputed to his principal. The undisputed testimony shows, however, that on December 29, 1928, the secretary of the association went to the Rockdale State Bank, informed it that Watson was dead, that his insurance had lapsed, and instructed the bank not to accept payment from any one on Watson's behalf. The bank officials at the time made a written memorandum to that effect. The acceptance by the bank of the assessments sent by appellee's attorneys was contrary to the instructions given, and due to the admitted negligence of the bank. Both the president and the secretary of appellant association denied having any knowledge of such payment until after citation was served upon them, and their testimony is not contradicted. Obviously the act of the bank in the matter was a mistake, and contrary to the express instructions of its principal. Under such circumstances the association would not be bound by its act in so doing. It cannot be said, under such undisputed facts, that the association thus knowingly accepted and used the money so paid. Nor is appellee in any position to complain. After notice of the assessments had been sent out to Watson, and before Mrs. Watson received same, she had been advised that her husband's insurance had lapsed, and that appellant refused to make payment for that reason, hence no issue of bad faith arises. The bank had no authority to bind the association further than merely to accept payment of assessments as a depository of its funds; and its acceptance for deposit only of money which was not due, or which might thereafter be refused or returned by the association for causes with which the bank had nothing to do, could not estop the association from asserting any legal rights or defenses which might otherwise be available to it.

Not having waived forfeiture by sending out the notice of December 28th, without knowledge of Watson's death prior thereto, and the forfeiture having been absolute at the time of his death, even if said bank had not been forbidden to accept payment on behalf of Watson, their act in doing so would not be binding on the association and could not serve to reinstate Watson's membership in appellant association after his death, and retroactively revive his insurance. Such a right is personal to the member himself, and does not survive to his beneficiaries. Bennett v. W. O. W. (Tex. Civ. App.) 168 S. W. 1023 (writ refused); McCann v. Supreme Tribe of Ben Hur, 171 Ark. 614, 285 S. W. 361; 45 C. J. 126; 19 R. C. L. 1245.

Under the foregoing conclusions we have no alternative but to reverse the judgment of the trial court and here render judgment for appellant.

Reversed and rendered.