HOME FIRE INSURANCE COMPANY *v.* WILSON.

## Opinion delivered July 7, 1913.

1. TRIAL—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES FOR PEREMPTORY INSTRUCTION.—When each of the parties to an action request the court to direct a verdict in his favor, and requests no other instruction, they in effect agree that the question at issue shall be decided by the court, and the court's finding has the same effect as the verdict of a jury would have had. (Page 326.)

2. APPEAL AND ERROR—REVIEW OF DIRECTED VERDICT.—In testing the correctness of the action of a trial court in directing a verdict for appellee, this court gives the evidence its highest probative value in support of the appellee's theory of the case. (Page 326.)

3. FIRE INSURANCE—VACANCY OF PREMISES—KNOWLEDGE OF AGENT.—The mere knowledge of the agent of a fire insurance company that the insured premises are vacant, and have been so for a longer period than that limited by the policy, is not a waiver of that provision of the policy, when no attempt is made to cancel it on that account. (Page 329.)

4. FIRE INSURANCE—VACANCY OF PREMISES—WAIVER.—When the local agent of a fire insurance company promises the owner to keep the premises insured, he does not waive the provision in the policy regarding liability in case of vacancy for a certain period, and his promise does not estop the insurance company from denying that a vacancy permit had been issued. (Page 329.)

5. FIRE INSURANCE—KNOWLEDGE OF AGENT—WAIVER OF PROVISIONS.—While evidence will not be received for the purpose of explaining or varying the terms of a written policy, the provisions of the policy may be and are waived if the agent has knowledge of the existence of conditions contracted against by the terms of the policy, and yet with the knowledge of their existence, issues the policy. (Page 330.)

6. FIRE INSURANCE—EXECUTORY AGREEMENT TO WAIVE PROVISIONS.—The executory agreement of the agent of a fire insurance company to waive future breaches, if such occur, is not enforceable. (Page 330.)

7. FIRE INSURANCE—PROVISION AGAINST VACANCY—WAIVER.—Where a fire insurance policy is issued and the premium is paid, and afterward the assured violates the provisions of the policy as to vacancy, creating a forfeiture, the insurance company having no knowledge of the same until after loss, does not waive the forfeiture by merely failing to return the unearned premium before suit is brought on the policy, nor is it precluded by such failure from setting up such forfeiture in defense of the suit. (Page 331.)

Appeal from Columbia Circuit Court; *George W. Hays,* Judge; reversed.

*T. D. Wynne* and *H. T. Harrison,* for appellant.

1. The rights of the appellees were forfeited by reason of the building being unoccupied and vacant, and remaining so for from three to five months prior to the time the fire occurred. The forfeiture became complete when the unoccupied condition of the building extended beyond a period of ten days, as provided for by the terms of the contract itself. 2 Clements, Fire Insurance, 367; 5 So. 768; 42 N. W. 630.

2. There is no merit in the contention that the forfeiture was waived by any act of the agent, Rhea. It is clear both from the language and express terms of the contract and from elementary law that he, a mere local agent, had no power or authority to waive the provisions of the policy against vacancy. 65 Kan. 373; 69 Pac. 345; 69 S. W. 42; 27 S. W. 122; 19 Cyc. 782, and foot note; 22 Pac. 1010; 7 N. Y. Supp. 589.

Appellees were bound by limitations upon the agent's authority as stipulated in the policy. 2 Clements on Fire Ins. 487, and cases cited in foot notes; 133 N. Y. 356; 54 Ark. 75; 32 S. W. 582.

There was neither an express nor implied waiver of the provisions against vacancy. It can not be said in this case that the local agent or any one representing the insurance company did any affirmative act which might have caused the insured to believe that the forfeiture would not be insisted upon. 87 Ark. 327; 86 Ala. 424. And it was not necessary to return or offer to return the unearned premium in order to plead the forfeiture as a defense. 87 Ark. 327.

*C. W. McKay,* for appellee.

1. Appellant's local agent at McNeil had authority to waive its right to insist upon a forfeiture of the policy on account of the vacancy clause in it. 62 Ark. 348; 63 Ark. 187; 71 Ark. 242; 88 Ark. 506.

2. Appellant's agent waived its right to insist upon a forfeiture on account of the vacancy clause in the pol-

icy. 82 Ark. 160; 123 Ala. 667; 75 Ark. 99; 88 Ark. 506; 87 Ark. 326.

SMITH, J. This suit was brought by appellees against appellant to recover $1,000 for the total destruction by fire of a dwelling house in the town of McNeil, Ark., on the night of the 28th of January, 1912, which the appellant, by its contract, agreed to pay appellees upon the destruction by fire of this building.

The appellant denied liability under this contract for the reason that the house was vacant at the time it was destroyed by fire, and had remained so for more than ten days prior to its destruction, in violation of the terms of said contract of insurance. The appellees admit that the house was vacant at the time it was destroyed by fire, and had been vacant for more than ten days prior to its destruction, but they say appellant has waived its right to insist upon a forfeiture on account of the violation of this part of the contract of insurance.

At the conclusion of the introduction of the evidence in the case, each party requested the court to give a peremptory instruction in his favor, and neither asked any instruction except that the court direct a verdict. In the case of *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, it was said, to quote the syllabus of that case: "Where each of the parties to an action request the court to direct a verdict in his favor, and request no other instruction, they, in effect, agreed that the question at issue should be decided by the court, and the court's finding had the same effect as the decision of a jury would have had." The court directed the jury to return a verdict for appellees for the full amount of the policy, together with the statutory penalty of 12 per cent, and also fixed the attorney's fee at the sum of $150. The court's action in assessing the penalty and fixing the attorney's fee is not complained of except appellant says that neither should have been done, because a verdict for appellant should have been directed by the court.

In testing the correctness of the court's action in directing a verdict for the appellees, under the authority

of the Mulkey case, we give to the evidence its highest
probative value in support of appellees' theory of the
case.   However, there are no serious conflicts in the evi-
dence, and the facts may be stated as follows:  The pol-
icy sued on was originally issued to one Ed M. Rhodes,
who was then the owner of the property, but who sold
and conveyed it to appellees, Wilson and Grayson.   The
policy was transferred to Wilson and Grayson, written
consent therefor having been given by a Mr. Rhea, who
was the company's agent, and endorsed upon the policy.
Appellees were residents of Magnolia, while Rhea re-
sided at McNeil, and the evidence is, that Rhea promised
appellees that he would look after the insurance and keep
this policy in force.   They had spoken of taking out this
insurance at Magnolia, where they could look after it, but
Rhea agreed to keep this policy in force, and for that
reason, they turned this piece of property over to him,
and he agreed to look after it and to keep the insurance
in force.   Mr. Grayson testified as follows:   "We ar-
ranged with Mr. Rhea to keep this place insured.   We
had the place right there, and were afraid we might
overlook it, and made arrangements with him, and he
said he would.   We told him whatever was necessary to
keep it insured, notify us and we would settle the bill."
and upon his cross examination, he made the following
answers:

Q.   You stated in your direct examination that you
had some kind of an agreement with Mr. Rhea to keep
the property insured?

A.   Yes, sir.

Q.   What was that agreement?

A.   Well, we were in there, me and Mr. Wilson, and
told Mr. Rhea we had that piece of property over there,
and wanted him to look after the insurance and keep that
policy in force, and whatever the insurance—whatever
the cost was—not to let it go out, but to notify us and
we would pay it."

And he further said:

"I spoke to Mr. Rhea to do whatever was necessary to keep it in force, and we would pay the bill, and he agreed to keep this one in force, and we turned that piece of property over to him."

The testimony of Mr. Wilson was substantially to the same effect. Rhea testified on behalf of the appellees, and was asked:

Q. State to the jury whether or not you have. ever been authorized to keep up the insurance on this place?

· A. Well, I do not remember about the conversation, but, of course, I was supposed to do my part of it.

Q. What do you understand your part to be?

A. To do what they said to do.

The house was bought by appellees, not for their own use or occupancy, but as an investment, of which fact Rhea was apprised at the time the policy was assigned to appellees. The house was occupied at that time, but later became vacant, and had been unoccupied for from three to five months before the fire. Rhea was aware of the fact that the property was unoccupied, and had been requested by appellees to procure a tenant for the property.

The policy contained the following clause: "This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void if the building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days," but appellees insist that the acts, statements, and conduct of appellant's agent estop it from insisting upon a forfeiture on account of the violation of the vacancy clause of the insurance contract. In effect. its position is that the agent's promise to keep the policy in force is a waiver of the right to insist on a forfeiture on account of the violation of any condition or stipulation of the policy. That such a promise having been made in the inception of the contract, an agreement would be implied not to insist upon a forfeiture upon a ground of the existence

of which the company's agent was advised before the fire, but had made no attempt to cancel the policy.

Rhea was a local agent with authority to issue and countersign policies of insurance and to collect premiums, and had the right to issue vacancy permits which become effective when reported to and ratified by the company. But his issuance of a permit was subject to the company's approval, and if this approval was not given, the permit was annulled.

The rule is well settled that the mere knowledge of the agent that the insured property is vacant, and has been for a longer period than that limited by the policy is not a waiver of that provision of the policy where no attempt is made to cancel it on that account. 2 Clement on Fire Ins., page 389. But appellees do not base their right to recover upon that ground, their position being that their agreement with the agent is either a waiver of the provisions of the policy as a part of the contract of insurance, or, that, if not, the company is estopped to deny that a vacancy permit was, in fact, granted. It is not contended that anything was said between appellees and the agent in regard to the issuance of a vacancy permit, nor does the proof show for what length of time one might have been issued, nor whether a single permit would have been sufficient to cover the entire period of the vacancy. Appellees say that the facts stated imply an agreement upon the part of the agent to secure such a permit as may have been necessary, and estop the insurance company from denying that fact.

It can not be said that any act or declaration of the agent would make a contract of insurance between the parties other than the one evidenced by the policy assigned to appellees and sued upon by them. In the case of *Hartford Fire Ins. Co.* v. *Webster,* 69 Ill. 392, the facts were somewhat similar to those of this case, and the court there said (quoting syllabus): "What an insurance agent may say as to the effect or waiver of certain conditions in the policy of insurance while the contract is being made, can not be received to explain or

vary the effect of the written contract.'' But, while evidence may not be received for the purpose of explaining or varying the terms of the written policy, it is still well settled, by the decisions of this and other States, that these provisions may be waived, and are waived, if the agent has knowledge of the existence of conditions contracted against by the terms of the policy, and yet, with the knowledge of their existence, issues the policy.

But this is not the case of property being vacant at the time of the issuance of the policy, and of that vacancy being known to the agent issuing the policy, for, in such cases as stated, the authorities hold that the insurance company has waived the conditions of the policy against vacancy. Clement, on Fire Insurance, volume 1, page 418. Nor is this the case of an insured advising the company's agent of a condition which would work a forfeiture, if not waived, yet one which could and would be waived upon the doing of some act by the agent which the insured assumed, in reliance upon the agent's promise, was done or would be done, but which the agent had, in fact, failed to do, for, in such cases, the authorities hold that the agent's neglect does not invalidate the policy.

If, before the policy is issued, the agent has knowledge of some fact, circumstance or condition contracted against by the terms and provisions of the policy which he thereafter issues, such provisions of the policy are said to be waived. *New Hampshire Fire Ins. Co.* v. *Blakeley,* 97 Ark. 567; *Peoples Fire Ins. Asso.* v. *Goyne,* 79 Ark. 315. But an agent's executory agreement to waive future breaches, if any should occur, is not enforceable, for such an agreement is not a waiver of the effect of an existing condition, but is an amendment to the extent of such an agreement, of the terms of the written contract between the parties, evidenced by the policy of insurance. The understanding between appellees and Rhea, when given the highest effect of any inference that can be drawn from the conversation between them, is no more than an executory contract to keep ap-

pellees' insurance in effect, and to do whatever may be necessary for that purpose. A similar question arose in the case of *Home Fire Ins. Co.* v. *Scales,* reported in 15 Southern 134, where the proof was that a vacancy permit had been issued, but had expired, and where the court found that at the time of the fire, the house was vacant, and no permit was outstanding, waiving the vacancy, and where the insurance company's agent, who issued the first permit, testified that he would have issued another, but for the fact that he did not regard the house as vacant. Chief Justice Campbell, speaking for the court, said: "It was no part of his business, as agent for the company, to keep policies from being avoided by violations of their conditions, whatever obligations he may have assumed by his engagements to the insured, as to which engagements he could not bind the insurer. * * * If Hibler (the agent), knew the facts, and thought the house occupied, he was mistaken in his judgment of what was required to constitute occupation. Granting that his knowledge is imputed to the company, the case is not altered. Hibler may have been under obligations to Scales (the owner), and he may have disregarded it or erred in his judgment, and Scales may have cause of complaint against him, but, in all of this, Hibler was the friend and agent, if at all, of Scales, and not of the company. If Hibler, the agent, had done anything in his capacity as agent, after the house was unoccupied, to mislead the insured, the case would be different, but nothing of that sort occurred. There was silence, and that is never ground for estoppel except where it is a fraud which can not be predicated of this silence. The agent had a right to be silent, and give no notice as to the unoccupied condition of the house."

Appellees also insist that they should recover here because the unearned premium was not returned nor tendered, but this question was decided adversely to that contention in the case of *Capitol Fire Ins. Co.* v. *Shearwood,* 87 Ark. 326, where it was said: "Where a fire insurance policy is issued, and the premium is paid and

afterward the assured violates the provisions of the policy against incumbrances which creates a forfeiture, the insurer having no knowledge of the forfeiture until after the loss occurs, does not waive same by merely failing to return the premium before the suit is brought to recover the amount of the policy, nor is it precluded by such failure from setting up the forfeiture in defense to the suit."

The judgment of the court below is reversed and the cause remanded.