DICKINSON, RECEIVER, AND CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* ATKINS.

Opinion delivered January 28, 1918.

1. MASTER AND SERVANT—RAILROAD—TENDER OF WAGES DUE—DE MINIMIS NON CURAT LEX.—A railroad company discharged an employee, appellee, on January 15 and tendered to him wages due in the sum of $25.14, without tendering interest on the same which amounted to between three and a half and four cents. *Held,* the appellee could not recover any penalty for a failure to make such tender of interest, for the reason that the amount of the interest was so small as to come within the maxim *de minimis non curat lex.*

2. MASTER AND SERVANT—RAILROAD—WAGES DUE—TENDER—REFUSAL TO ACCEPT—DUTY TO STATE WHY—INTEREST.—Where a railway employee, who has been discharged, refuses to accept a tender of the wages due him, on the ground that interest thereon is not included, he must state his reason for declining the tender, before any right to recover a penalty will accrue.

3. MASTER AND SERVANT—WAGES DUE—USELESS TENDER.—A tender of wages is not required, where it is evident that the tender will not be accepted.

4. MASTER AND SERVANT—DISCHARGE WITHOUT CAUSE—PENALTY.—Kirby's Digest, § 6651, provides that where a servant has a contract for employment for a definite period of time and is discharged without cause, that he may recover a certain penalty, and have an action also for any damages sustained by reason of the wrongful discharge. *Held,* this statute does not create an independent cause of action, *ex delicto,* sounding in tort growing out of a discharge without cause, but the statute gives to the discharged employee, in addition to the penalty prescribed in Kirby's Digest, § 6649, a right to recover such damages as he may have sustained by reason of discharging him without cause before his contract had expired. The measure of damages in such cases is the amount of wages that the servant would have earned had he been permitted to work for the full period of his contract, less

such sums as he might, by reasonable diligence, have earned in a similar business, making allowance for the expense of obtaining other employment.

Appeal from Prairie Circuit Court, Northern District; *T. C. Trimble,* Judge; modified and affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1. On January 31 plaintiff was tendered a check for his wages. He did not demand interest, nor refuse the check because a few cents interest was not included. The tender of wages without interest stopped the running of the penalty, and plaintiff's recovery was limited to $52.71, his wages, and $27.36 penalty. Kirby & Castle's Digest, § 5464; 64 Ark. 83; 96 *Id.* 634; 93 *Id.* 497; 76 *Id.* 326. The court erred in giving plaintiff's instructions 1 and 7 and in refusing defendant's Nos. 7 and 8.

2. Plaintiff was entitled to recover nothing on his second count. Kirby & Castle's Digest, § 5466; 9 Ark. 394; 19 *Id.* 671; 57 *Id.* 370; 58 *Id.* 617; 39 *Id.* 280.

*Emmet Vaughan,* for appellee.

1. No sufficient tender was made as no interest (however little) was included. 92 Ark. 425, 430. A tender must include principal and interest with costs. 28 So. 217; 68 N. Y. S. 833; 73 *Id.* 153; 86 *Id.* 732; 65 N. E. 577.

2. Under section 6651, Kirby's Digest, plaintiff was entitled to recover on the second count any damages, over and above the penalty, he may have sustained by reason of his wrongful discharge. The corporation was liable for the torts of its agent. 118 U. S. 256; 1 Black, 39, 50; 147 U. S. 101-109; 14 Howard, 468; 121 U. S. 637; 5 Thompson on Corp. 5523-4-5; 13 Cyc. 117; 29 S. W. 743; 67 Pac. 99.

3. The case was submitted upon proper instructions and the evidence is sufficient.

### STATEMENT OF FACTS.

The appellee was an employee of the Chicago, Rock Island & Pacific Railway Company on a salary of $53 per month. He was discharged by the company on the 15th

of January. At that time the company owed him the sum of $25.14, which he then demanded of his timekeeper, who was appellants' agent. Appellee told the agent to have the check for the amount due him sent to Des Arc. On the 31st day of January appellants tendered to the appellee the sum of $25.14, the amount that was due him on the 15th, the date of his discharge. Appellants did not tender the appellee any interest on this amount from the time same was due up to the time the tender was made. The amount tendered was refused. The appellee demanded that in addition to the $25.14 due him at the time of his discharge that he receive the wages at the rate of $53 per month from the date of his discharge to the time when the tender was made, which being refused, he instituted this suit against appellants and prayed judgment for the sum of $25.14, the wages actually earned and due him at the time he was discharged, and also for wages at the rate of $53 per month until final settlement.

There is no testimony to show that at the time the tender of the $25.14 was made to appellee he demanded of appellant interest on this sum to that date, and there is no testimony to show that he would have accepted the tender if it had included the interest to that time. On the contrary, the testimony tends to show that even if the interest had been included in the amount tendered he would still have refused to accept the tender for the reason that he claimed that his wages should have continued up to the time of the tender at the rate of $53 per month, and, besides, his testimony tends to show that he would not have accepted the tender for the further reason that he contended that the company's failure to pay the amount of wages due him, within seven days after his discharge and his demand for same, had incurred a penalty, which, at the date of the tender of the check amounted to $27.36.

The appellee testified that he called for his check about four days after he was discharged, and then went back in about seven days and the agent said it had not come. The appellant's station agent testified that the appellee came in on the night of the 20th, after his dis-

charge on the 15th, and asked about his check; that witness told him that if he would come around "tomorrow morning" he would give him the money. Appellee said "all right," but did not show up any more until the 31st, when the check for the amount of wages was tendered appellee and he refused it.

For an additional cause of action the appellee set up in the second count of his complaint that he was discharged by the receiver without cause and "upon a trumped-up charge of having misappropriated a pearl shipped to the station where the appellee was employed, through the American Express Company, which company maintained an office in the office of the railway company;" that he believed the charge was framed by the agent of the railway company in order to secure his discharge and make way for the employment of a relative of the local agent; that by reason of the discharge his credit had been destroyed with the railway company and the express company, and with the bonding company which executed his bond; that his standing in the community for honesty and integrity had been impaired, greatly to his damage, in the sum of $2,500, for which he also prayed judgment.

The appellants denied specifically the allegations of the second count of the complaint, and stated that if their agent made any false statements, or any statements, in discharging appellee, impugning his honesty and integrity, that the agent did so without the consent of the appellants, and that if there were any such statements by the agent they were not in the line of his duty.

The testimony on behalf of the appellee on the second count of his complaint was to the effect that prior to his discharge he had never heard of any complaint being made as to his inefficiency and incompetency as an employee. He was short during the first week of his employment in the sum of $18, which appellee refunded. He was also short another time, and while he was sick the agent communicated the fact of appellee's shortage to appellee's uncle, who refunded the money. Appellee was

not short after that until he was taken sick and went to Little Rock, and when he came back he paid the shortage. Appellee made a bond before he went to work for the appellants. While he was working for the appellants a pearl came through the express company to the address of A. L. Irwin. Appellee signed for the pearl, put it in the pigeon hole of his desk where he kept small packages all the time. It was appellee's duty to deliver the pearl to Irwin when he came for it, but the next morning after the package containing the pearl came in it could not be found. The agent, Mr. Turner, wanted to know if appellee was sure that he put it in the pigeon hole and appellee told him that he was. Appellee thought perhaps it had been misplaced, but he turned the office upside down at least a half dozen times and could not find it. The agent said that somebody got it. The pearl was lost on Friday. Appellee was discharged on Monday night, and he learned that the pearl was found Tuesday night following. The agent, Mr. Turner, found it across the room from appellee's desk, down on the floor about a foot from the corner of the safe.

A day or two after appellee was discharged Miss Ruth, the agent's relative, took appellee's place. Appellee had nothing to do with misplacing the pearl. He placed it where he usually put such packages. Appellee was greatly worried about it; everybody was talking about it. It was a source of embarrassment, mortification and chagrin to appellee. He did not sleep for about three nights. The agent sent a telegram to the superintendent of the express company at El Reno, saying that the pearl had been lost by the appellee and telling him that appellee was bonded in the American Surety Company, and that appellee was not able to pay for the pearl. In answer to this telegram, the superintendent telegraphed: "Such negligence must not be tolerated. Atkins must be removed at once. Will take it up with the bonding company," or something to that effect. The pearl was valued at $300. The agent told appellee several times to look after the express matter. The pearl came in on the noon

train and appellee stuck it in the pigeon hole and never thought of it until he came in to get it the next morning. He never mentioned it to the agent, Mr. Turner. Turner never accused appellee of stealing the pearl, and pointed out the place where he found it, but it could not have been there when he was looking for it. The room had been swept a dozen times, and it would have been swept out if it had been in that position. Turner was appellee's superior and everything appellee did was under his directions.

The testimony on behalf of appellants on the issue raised in the second count tended to show that appellants discharged the appellee on the grounds of general incompetency and carelessness, which extended over a considerable period of time; in fact, all the time that he was employed. Their agent did not charge him with any dishonesty; did not accuse him of misappropriating the pearl, and they would not have discharged him for any one of the mistakes that he made.

The testimony of the agent, Turner, enumerates several items showing that the appellee was short in his accounts at different times before the pearl was lost. The witness did not know anything about the pearl being lost until it was called for by Irwin's agent. The appellee had not said anything to him about it. Appellee had signed for the pearl, and when the matter came up witness asked appellee what he did with it and he replied that he laid it ''right there on the corner of the desk.'' He afterwards said that he shoved it in a pigeon hole. They both searched for it, and witness found it on Monday night lying right up under the safe, up against the wheel of the safe. Witness had not looked there for it before but had looked every place where he thought it could be. In sweeping out they should sweep under the safe; sometimes they do.

The above are substantially the facts. Upon the first count of the complaint the court instructed the jury, in effect, that if they found from the evidence that appellee was discharged by appellants, and that he demanded

his wages earned up to the time of his discharge from the agent of appellants who was the keeper of his time, or that a valid check therefor be sent to some station where a regular agent of appellants was kept within seven days, and that payment was refused, and appellants failed to pay said wages within the time allowed by law for the payment thereof without a penalty, that plaintiff would be entitled to recover, in addition to the wages already earned, other wages at the same rate from the date of his discharge until the amount due him was paid or judgment rendered for the same, unless the jury should find from the evidence that appellants had tendered to appellee the wages actually earned, with legal interest, in which event the appellee would not be entitled to recover a penalty after the tender. Further, that the wages due the appellee upon the date of his discharge were due to be paid to him within seven days thereafter, and that interest at the legal rate began to run from that time, and that a tender of the wages after that time which did not include the interest accumulated up to the time of the tender, was not a full tender and would not stop the running of the penalty.

Upon the second count of the complaint, the court, in effect, instructed the jury that a servant whose employment was for a definite period of time and who was discharged without cause before the expiration of such time might, in addition to the penalty prescribed by the act, have an action against his employers for any damages he might have sustained by reason of his wrongful discharge, and that if they found from the evidence that appellee was employed by appellants for a definite period of time, and that he was discharged without cause before the expiration of such time, then they should find for the appellee in such a sum as the jury might find he was entitled to recover from the evidence for any damages that he may have sustained.

The court further instructed the jury that a corporation was liable for punitive damages for the wilful acts of its agents or servants acting within the scope of their

employment, although the particular act complained of was not authorized nor ratified by appellants, and that if they found that the appellee was discharged upon a trumped-up charge lodged against him by the agent of the appellant which was wilfully done and which was within the scope of his employment, and that such charge was false, that the appellants would be liable and the jury should find for the appellee in such sum as they might find from the evidence that he was entitled to in addition to the compensatory damages, if any, and in addition to such sum as they might find from the evidence, if any, that he was entitled to recover on account of unpaid wages and penalty.

The appellant objected to these instructions, and asked the court to instruct the jury on the first count of the complaint that the appellee was not entitled to recover anything in the way of penalty for not paying the wages due him within seven days after he was discharged, and that he was not entitled to recover anything on the second count of the complaint.

Appellants also asked the court to instruct the jury that if a valid check was tendered by the appellant to the appellee for the amount of wages due him at the time of his discharge, that such tender stopped the running of the penalty in the future, even though no interest on the amount due the appellee at the time he was discharged was included in the check, unless the appellee declined such check on the ground that interest was not included. And, further, that the appellants did not have to tender the appellee the wages due him and the penalty up to that time to stop the running of the penalty in the future; that if the appellee declined to accept the check on the ground that the penalty was not included along with the wages, and said nothing about declining the check because interest was not included, then such tender stopped the running of the penalty.

The appellants further requested the court to instruct the jury, on the second count, that the appellee's measure of damages for wrongful discharge would be the differ-

ence between what he would have earned had he been permitted to continue in appellants' employment until his contract expired and what he was able to earn during such time in some other employment which he obtained or could have obtained, if any, by asking for it.

Appellants also asked specific instructions to the effect that under the pleadings and the evidence they were not liable to the appellee in the way of exemplary or punitive damages for anything done or said by their agent, Turner, in connection with discharging the appellee.

The jury returned a verdict in favor of the appellee on the first count for the amount of his salary due January 15, 1917, $25.14, and for interest on same from January 15, 1917, to March 7, 1917, twenty-one cents, and for salary at the rate of $53 per month from January 15, 1917, to March 7, 1917, $91.46, making a total of $116.81. On the second count they returned a verdict in favor of the appellee for $500. The case is here on appeal from a judgment in favor of the appellee against the appellant for the above amounts.

WOOD, J., (after stating the facts). When appellants discharged the appellee on the 15th day of January there was due him the sum of $25.14. On the 31st day of January thereafter the appellants tendered to the appellee this sum, without including the amount of the interest thereon due to that date. The amount of the interest on the date of the tender, excluding the seven days allowed by law for the appellants to have made payment, at the rate of 6 per cent. per annum, would be between three and one-half and four cents.

(1) For the purpose of this case it may be conceded, without deciding the question, that in order to stop the running of the penalty it was necessary for the appellants to tender to appellee, not only the wages that were due him at the time of his discharge, but also the interest that had accrued on the amount of such wages from the time of his discharge to the date that the tender was made. Nevertheless, even if such were the law, under the undis-

puted facts of this record the appellee was not entitled to recover any penalty for a failure to make such tender of interest for the reason that the amount of the interest was so small as to come within the maxim *de minimis non curat lex.* Broom's Legal Maxims, page 118. The amount of interest was so small that the law will not take notice thereof, and the tender on January 31 of the amount of the wages that was due appellee on the 15th of January prevented the accrual of any penalty after the date of the tender. *St. L., I. M. & S. Ry. Co.* v. *Paul,* 64 Ark. 83; *St. L., I. M. & S. Ry. Co.* v. *Bryant,* 92 Ark. 425.

(2) Conceding that the law requires not only the wages past due, but also the interest due up to the date of the tender, in order to stop the running of the penalty, the undisputed facts of this record make it manifest that if the appellee had made it known to the appellants that he was refusing the amount tendered because the interest was not included, that appellants would have at once included such interest. If the appellee intended to predicate his right to a penalty upon the ground that the appellants had not tendered him the interest as well as the principal at the time the tender was made, then good faith on his part required that he notify appellants of that fact. This is especially true where the item of interest was so insignificant as to make it manifest that the appellants would have included the same if their attention had been drawn to the appellee's insistence in that respect. *Hall* v. *C., R. I. & P. Ry. Co.,* 96 Ark. 634.

(3) Furthermore, the pleadings and the undisputed evidence show that the appellee would not have accepted the tender even if it had included the trifling sum of three or four cents interest that was due, in addition to the principal, on the date the tender was made. The only reasonable conclusion that can be drawn from the pleadings and the proof is that appellee refused the tender, not because it did not include interest due, but because he claimed that the appellants were due him an additional sum for wages as a penalty that had already accrued at

the time the tender was made, which additional sums were not embraced in the tender.

A tender is not required where it is evident that it will not be accepted. The law never requires "a vain thing to be done." *Read's Drug Store* v. *Hessig-Ellis Drug Co.,* 93 Ark. 497; *Thompson* v. *Baxter,* 76 Ark. 326.

Therefore, the court erred in its instructions telling the jury that the penalty would run until the date of the judgment, unless the appellants had tendered the wages actually earned with legal interest.

The jury might have found, under the pleadings and the evidence, that the appellee was entitled to recover the amount of his wages, $25.14, and interest thereon to the day of the trial, and $27.36 penalty up to the date the tender of his wages was made, making a total sum of $52.71.

The judgment of the trial court will be modified and reduced to this sum, and as so modified affirmed, but without costs.

II. The appellee predicates his right to recover on the second count on the provisions of section 6651 of Kirby's Digest, as follows: "Any such servant or employee whose employment is for a definite period of time, and who is discharged without cause before the expiration of such time, may, in addition to the penalties prescribed by this act, have an action against any such employer for any damage he may have sustained by reason of such wrongful discharge, and such action may be joined with an action for unpaid wages and penalty."

(4) The purpose of this statute was not to create an independent cause of action, *ex delicto,* sounding in damages as for a tort growing out of a discharge without cause, but the design of the Legislature was to give to the employee who was discharged without cause the right to recover, in addition to the penalty prescribed by section 6649 for a failure to pay the wages due the servant or employee at the time of his discharge without cause, such damages as he may have sustained by reason of discharging him without cause before his contract had expired,

where he was employed for a definite period of time. For instance, if a servant or employee, under the statute, was employed for a definite period of time, say six months or a year, and at the end of one month such servant should be discharged without cause, then, in such case, if the wages due at the time of such discharge were not paid according to the terms prescribed by such section the railway company or corporation would incur the penalties therein prescribed for a failure to pay the wages according to the provisions of that section, and in addition to the penalty thus provided the servant or employee, if his contract was for a definite period of time, and if he were discharged without cause, would have the right to recover such damages as he had sustained by reason of the breach of his contract in discharging him without cause before his contract had expired. The measure of damages in such case would be the amount of wages that he would have earned had he been permitted to work for the full period of his contract, less such sums as he might, by reasonable diligence, have earned in a similar business, making allowance for the expense of obtaining other employment. *Van Winkle v. Satterfield,* 58 Ark. 617.

The appellee was allowed to recover upon his second count, under an erroneous construction of the law and erroneous instructions, the sum of $500.

The pleadings and the proof do not warrant any recovery on this count, and the judgment on this count is reversed and the cause of action as set forth in the second count is dismissed.