McCann *v.* Supreme Tribe of Ben Hur.

Opinion delivered July 5, 1926.

1. APPEAL AND ERROR—DIRECTED VERDICT—TEST.—In testing the correctness of a directed verdict, the appellate court must consider the testimony in the light most favorable to appellant.

2. INSURANCE—BENEFIT ASSOCIATION—CONSTITUTION AND BY-LAWS.—Where the constitution and by-laws of a benefit association are made part of a contract of insurance, they are binding upon the beneficiary.

3. INSURANCE—REINSTATEMENT.—Where an application for reinstatement and past dues, mailed before the insured's death, were received by the supreme tribe of a benefit society after his death and rejected by that officer, that did not constitute a reinstatement, where the by-laws of the society required acceptance of the application by that officer.

4. INSURANCE—WAIVER OF FORFEITURE.—Negotiations between a benefit society and a member looking toward reinstatement of the member did not constitute a waiver of the forfeiture by nonpayment of dues, where such negotiations contemplated a compliance with the by-laws, which was not done.

5. INSURANCE—REINSTATEMENT—ACCEPTANCE OF APPLICATION.—Failure of the local officer of a benefit society, having no authority to accept applications for reinstatement and grant reinstatement, to make tender of repayment of dues *held* not to constitute an acceptance of an application for reinstatement made after death of the member.

Appeal from Craighead Circuit Court, Jonesboro District; *W. W. Bandy*, Judge; affirmed.

*Gautney & Gautney,* for appellant.

*Horace Sloan,* for appellee.

McCULLOCH, C. J. Appellee is a fraternal benefit association, organized under the laws of Indiana, domiciled at the city of Crawfordsville, in that State, and doing business in the State of Arkansas. Subordinate organizations, designated as courts, have been established in this State, and Ernest L. Akens was a member of the local organization at Wynne, Arkansas. A benefit certificate, or policy, was issued to Akens, payable to appellant, who was then his wife. Akens was a railroad brakeman, and was accidentally killed on November 23, 1923,

while on duty at or near the town of Tinsman, in the southern part of this State. Appellant has married again since the death of Akens, and this is an action instituted by her against appellee to recover the amount named in the policy, or benefit certificate.

Appellee defended on the ground that Akens had forfeited his membership and policy by failing to pay dues and assessments within the time required under the by-laws, and that he had not been reinstated to membership at the time of his death. The contention on the part of appellant is that the reinstatement was complete, and the question of reinstatement in accordance with the by-laws is the sole issue in the case. The court directed a verdict in favor of appellee, and in testing the correctness of that direction by the court we must, of course, consider the testimony in its light most favorable to appellant's right of action.

The constitution and by-laws of the association were, in express terms, made a part of the contract of insurance with the member, and the beneficiary under the policy is bound thereby. *Woodmen of the World* v. *Jackson,* 80 Ark. 419. It is undisputed that Akens stood suspended and forfeited his membership by nonpayment of dues and assessments for the month of September, 1923, payable not later than the twenty-fifth day of that month. The constitution and by-laws provided for the reinstatement of suspended members, and the applicable by-law on that subject is as follows:

"Section 109. Any member who has been suspended for more than thirty days, and less than six months, must, in addition to his warranty of good health, make affidavit before some public official authorized to administer oaths, stating that he is in as good health as when beneficial certificate was issued, as provided on the blank form furnished by the supreme scribe; and if it appears that such member warrants his health to be good, and this fact is certified to before some public officer authorized to administer oaths, he may tender such health certificate to his local scribe, together with his monthly pay-

ments and per capita tax for all the months in which he was suspended and the court dues, if any be due, as well as any additional payments or extra assessments that may have been called in that time, and a monthly payment, including per capita tax, for the current or present month. It is the duty of the local scribe to see that the health certificate so tendered is made out in ink, is dated, and all blanks are filled as required by the laws. He will then forward the same to the supreme scribe, holding the monthly payments and per capita tax and forwarding them with the next monthly report, unless notified by the supreme scribe that the application for reinstatement has been refused, in which event he will return the payments to the applicant. If the supreme scribe is satisfied of the truth of the statements contained in said certificate of health, and relying on the warranties contained therein, he will reinstate the suspended member and issue a certificate of reinstatement.   *   *   *''   .

After Akens' suspension, one of the supreme officers mailed to him, from the home office at Crawfordsville, Indiana, a form letter, dated October 16, 1923, which reads as follows:

''Dear Member: You are suspended—the protection you thoughtfully provided for your beneficiary is no longer in effect. Was your nonpayment due to oversight? If so, notify your scribe you wish to be reinstated at once. Has a mistake been made? If so, write to us, inclosing your receipt, if you have one, and a prompt adjustment will be made. Were you dissatisfied? If so, tell us the reason, so we may apply a remedy, but don't leave your beneficiary unprotected in the meantime—apply for reinstatement at once. Did you feel that you could not afford to pay any longer? If so, I want to ask you what you would do if your income stopped for a few months? Imagine, then, the circumstances of your beneficiary when your income stops forever. The protection of the Tribe of Ben Hur will be greatly needed then. The Tribe of Ben Hur has paid nearly $22,000,000 to the families of deceased members. It cannot pay

anything to your beneficiary unless you reinstate. Reinstatement is easy—just sign the inclosed health certificate and hand or send it to your scribe with your payments. Take no chances. Tomorrow may be too late. Do it now.''

Proper blanks for reinstatement were inclosed with this letter, and notice was appended, as an addendum to the blank form, of the fact that, if the applicant for reinstatement had been suspended for more than thirty days, he must make affidavit to his application before some officer authorized to administer oaths, and under seal. At the time that letter was mailed out to Akens, thirty days had not elapsed since the date of his suspension. Appellant was herself a member of the association, and had been suspended, and, according to her testimony, she and her husband both made out applications for reinstatements on November 16, 1923. She and her husband were in El Dorado, Arkansas, at that time, and she mailed the two applications to her father at Wynne. Neither of the applications, according to her testimony, was accompanied by affidavits required by the by-laws of the association. She testified that she also mailed to her father at that time a check for twenty dollars and a five-dollar bill. Appellant's father testified that he received these blanks and the accompanying checks and money from his daughter, and that the application for Akens' reinstatement was mailed to the local scribe of appellee's court in Wynne, together with the check and the five-dollar bill. The witness says that he does not remember whether he mailed the communication himself or whether he gave it to one of his sons-in-law to mail. At any rate, Foster, the local scribe, testified that he received the application of Akens and the check and five-dollar bill in the mail on November 24, 1923, which was the next day after Akens was killed. Foster testified that, on November 28, 1923, he made out a receipt for the payment of Akens' dues and assessments. Foster antedated the receipt as of November 18 and gave it to appellant's brother-in-law. Foster testified that he mailed the appli-

cation to the supreme scribe, but that he made a mistake in the address by sending it to Crawfordsville, Arkansas, and that upon return it was changed to Crawfordsville, Indiana.

The testimony is undisputed that Foster was informed on November 24 of the death of Akens, and, of course, was in possession of that information when he subsequently signed the antedated receipt and mailed the application to the supreme scribe. At the time of the receipt of the application by the supreme scribe at Crawfordsville, the latter was informed of the death of Akens, and promptly rejected the application for reinstatement, and immediately gave directions to the local scribe to that effect, and directed a return of the check and money, which were still in the hands of the local scribe, who testified that he made an effort to return the money to somebody, but could not find any one who would accept it.

Now, it is manifest from the undisputed evidence that the reinstatement was not accomplished in accordance with the terms of the by-laws, which provide expressly that the reinstatement could only be granted by authority of the supreme scribe. Even if it were undisputed that the application, together with the check and money, was placed in the mail, directed to the local scribe, before Akens' death, still this did not constitute a reinstatement, for the by-laws expressly provided to the contrary, and there could be no reinstatement until the application was accepted and granted by the supreme scribe. *Sovereign Camp W. O. W.* v. *Barnes,* 154 Ark. 486, 243 S. W. 55. The by-laws contained an express provision that local officers should not have authority to vary the by-laws. Counsel for appellant invoke the rule that an insurance company waives a forfeiture by entering into negotiations with the assured, treating the policy as being in force after the alleged forfeiture has occurred. The weakness of this contention, however, is that appellee did not enter into negotiations with the assured other than those negotiations provided for in the by-laws with

reference to reinstatement. After the death of Akens nothing occurred which constituted a waiver. The local scribe had no authority to grant a reinstatement at that time or at any other time, and, according to the undis-puted testimony, the supreme scribe rejected the appli-cation immediately upon its receipt. The by-laws pro-vided that the local scribe should hold in his possession the money paid for reinstatement and that it should be returned upon rejection by the supreme scribe, but, according to the evidence, the money was tendered back by the local scribe. Even if there was no technical tender of repayment of the money, this did not constitute an acceptance of the application, which was sent in after the death of the member.

It is also contended that the form letter sent out from the home office to Akens on October 16 constituted a waiver by the supreme officers of the terms of the by-laws with respect to the method of reinstatement, and that it invited Akens to become reinstated merely by delivering the application and amount of delinquency to the local scribe. This contention is unsound, for the letter was merely an invitation or an admonition concern-ing the duty of the member to become reinstated, and it did not in any sense attempt to waive any provisions of the by-laws. It was a mere invitation to the member to cause himself to be reinstated in the manner prescribed in the by-laws. The statement that reinstatement "was easy," and the direction to "sign the inclosed health certificate and hand or send it to your scribe with your payment" did not waive any requirement of the by-laws, as it did not carry any implication that the reinstatement could be accomplished merely by complying with that sug-gestion by sending in the application. Moreover, at the time this letter was sent out and received by Akens, thirty days had not elapsed, and the by-laws did not require an affidavit to the health certificate as a pre-requisite to reinstatement, but at the time the applica-tion was made out at El Dorado, on November 16, the thirty days had expired, and the affidavit was an essential

requirement. When the application was received by the local scribe, it appeared to be sworn to before a notary public in Wynne, but, according to the undisputed testimony of appellant herself, neither she nor her husband made any affidavit, and could not have done so in Wynne, for the reason that they were both in El Dorado. At any rate, the supreme scribe was authorized to reject the application if found not to be in accordance with the by-laws, and this was promptly done by that officer upon receipt of the application.

We are of the opinion that the trial court was correct in peremptorily directing a verdict in appellee's favor, for, according to the undisputed testimony, there was no liability.

Affirmed.