**TAYLOR v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.**

No. 12287.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1943.

Charles E. Wright and J. R. Wilson, both of El Dorado, Ark. (Thomas Compere, of Hamburg, Ark., on the brief), for appellant.

Malcolm W. Gannaway, of Little Rock, Ark., for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The questions for decision are (1) whether a policy of health and accident insurance, issued by the appellee to Thurman Taylor on May 1, 1940, in which his wife, the appellant, was named as beneficiary, was in force on December 22, 1940, at the time the insured died from injuries received in an automobile accident; and (2) whether, if the policy was not in force at that time, the insurer is, nevertheless, liable to the appellant because it is estopped to deny liability or has waived the right to assert its nonliability. The controlling law is that of Arkansas.

This action was brought by the beneficiary to recover $4,000, which the policy provided should be paid to her in the event of the accidental death of the insured while the policy was in full force and effect. In her complaint she asserted that the policy was in force at the time of the death of the insured, that the insurer was estopped to assert that the policy had lapsed and had not been reinstated, and that the insurer had waived its defense to her claim. The insurer denied that the policy was in force at the time the insured died, asserted that it had lapsed and had not been reinstated, and denied liability to her. The case was tried to a jury, and, at the close of all of the evidence, the court directed a verdict in favor of the insurer on the ground that it appeared as a matter of law that the policy in suit was not in force at the time of the insured's death.

The essential facts are not in substantial dispute. The policy called for the payment of premiums of $7.50 quarterly, after June 1, 1940. The premium falling due December 1, 1940, was not paid when due, and the policy lapsed. It contained the following provision relative to reinstatement:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Association or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

Between December 1, 1940, and December 21, 1940, the insurer sent a number of communications to the insured, calling his attention to the lapse of his policy for nonpayment of premium, and urging him to pay the premium which was in default and to apply for reinstatement of his policy. At about 10:30 o'clock in the morning of December 21, 1940, the insured, who lived at Hamburg, Arkansas, caused to be mailed to the agency of the insurer at Little Rock, Arkansas, a check for the premium due December 1, 1940, with a signed reinstatement application on a form furnished by the insurer. Immediately preceding the signature of the insured on this form appeared the following language:

"I hereby enclose payment covering my premium due Dec. 1, 1940, reaffirm my original application for my policy and ask that it be reinstated in accordance with its terms."

On the back of this reinstatement application form was the following statement: "Not having received your payment due December 1, 1940, as per our notice, your insurance is in suspension until your payment is received and accepted at the Association's office as provided by the policy. Kindly fill out the blank on the opposite side of this slip and return it with your payment at once when your reinstatement will have immediate attention."

After the insured had mailed his check and application for reinstatement to the insurer and about 11:00 o'clock P. M. of the same day (December 21, 1940), he was injured in an automobile accident and died from his injuries at about 2:15 o'clock A. M. on December 22, 1940. At that time the envelope containing the check and reinstatement application was still in the mail, and it was not received by the insurer's agency at Little Rock, Arkansas, until December 23, 1940. The agency on December 23, 1940, without knowledge of the insured's death, deposited his check and mailed him a formal receipt for the premium, dated that day, which recited:

"Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, reinstates the policy on date of this receipt, as provided in policy, until 12 o'clock noon, standard time,

March 1, 1941, at which time another premium will be due."

On December 27, 1940, the beneficiary wrote to the insurer at Little Rock, Arkansas, notifying it that the insured was killed in an automobile accident on December 21, 1940, and that she had the policy in suit. She asked for the necessary proofs. The insurer, in answer to this letter, on December 29, 1940, wrote her that, since the insured had died prior to the reinstatement of his policy, there was no coverage, but that she would be entitled to a refund of the reinstatement premium, and that if she would forward the policy a check for the refund of the premium would be sent. On January 1, 1941, a letter was written by Guy Nolley, on behalf of the beneficiary, to the Claim Auditor of the insurer at Little Rock, expressing the opinion that the reinstatement of the policy was effective on December 21, 1940, when the insured deposited his check in the mail. On January 3, 1941, the insurer, through its general manager at Little Rock, wrote Nolley, stating that, under the terms of the policy, it "remains lapsed until the acceptance of the premium by the Association and even when a premium should be accepted, the policy would only cover accidental injury thereafter sustained," and that the insured's premium payment was received December 23, 1940. The last paragraph of the letter was as follows: "We regret exceedingly that Mr. Taylor allowed his policy to lapse but as you can clearly see from the above explanation and an examination of Mr. Taylor's Policy that we have no way whatever of making any payment on this claim."

On January 13, 1941, the Claim Auditor of the insurer wrote Mr. Nolley. The Auditor's letter indicates that Nolley had called at the office of the insurer in Little Rock to discuss the case with the Auditor. He stated in his letter that the file on the claim was not sufficiently complete to enable him to discuss the claim intelligently, that a copy of the death certificate had not been secured, and that the regular investigation had not been completed. He suggested that it would be better to wait a few days and that he would then go to Hamburg to discuss the claim fully with Nolley and Mrs. Taylor.

On January 30, 1941, Nolley wrote the Claim Auditor asking if he had completed his investigation, and, if so, what his findings were. On February 10, 1941, the Auditor answered the letter as follows:

"This will acknowledge receipt of your letter of January 30th regarding our investigation of the death of Mr. Taylor and whether or not the above policy was effective to cover his death, and this is to advise that we have made a rather extensive investigation and it is being continued at this time. Our original investigation reveals circumstances that require further investigation.

"We want to assure you that we will continue our investigation to a conclusion just as soon as possible and we will advise you definitely as to our position."

On February 11, 1941, Nolley wrote the insurer that he had advised the beneficiary to turn the policy over to her attorneys, and that any further matters relative to the policy should be taken up with them. In answer to a letter written on March 29, 1941, to the insurer by one of the beneficiary's attorneys, Thomas Compere, evidently demanding payment of the policy, the insurer, through its Claim Auditor, replied:

"Your letter of March 29th has been brought to the writer's attention and we believe that it would be beneficial to all concerned if you would hold this matter open until such time as the writer can call on you in Hamburg for a personal discussion of the case. If you will advise that this is satisfactory, I will arrange to call on you at an early date and I feel that this would result in a better understanding and would be the means of avoiding litigation."

On April 3, 1941, the attorneys for the beneficiary wrote the insurer that they had "filed suit for the face of the policy, interest from this date, penalty and attorney fee, and had summons issued." They expressed a willingness to discuss the case, but an unwillingness to delay the action, which they expected would be tried the week of May 12, 1941.

On February 13, 1941, the insurer, from its home office in Omaha, Nebraska, had mailed to "Mr. Thurman Taylor, Box 151, Hamburg, Ark." a "Notice of Premium Due Mar. 1, 1941." Mrs. Taylor received the notice and sent her check for the premium, attached to the notice, to the home office, and obtained the usual receipt, dated February 28, 1941.

The first contention of the appellant is that the policy in suit was in force at the

time of the death of the insured, because the depositing of the premium check in the mail on December 21, 1940, effected a reinstatement of the policy. By the terms of the policy, "the subsequent acceptance of a premium by the Association * * * shall reinstate the policy, but only to cover accidental injury thereafter sustained." The plain meaning of this language, we think, is that, after default has occurred in the payment of a premium, the subsequent receipt and acceptance by the insurer of the past due premium will reinstate the policy from the time the premium is received and accepted.

■ The same contention which is made here by the appellant was considered in Massachusetts Protective Ass'n, Inc., v. Turner, 171 Okl. 14, 41 P.2d 689. The policy under consideration in that case contained the same provision as to reinstatement as the policy in suit. The question was whether the mailing of a check for a past due premium on January 3, 1928, operated as an acceptance of the premium by the insurer or whether the acceptance took place on January 16, 1928, when the insurer received the insured's check and retained it. It was held that the later date was the date of acceptance of the premium and of reinstatement of the policy. As the Supreme Court of Oklahoma ruled, the word "acceptance" comprehends both physical receipt and mental assent. Compare: Gagne v. Massachusetts Bonding & Ins. Co., 78 N.H. 439, 101 A. 212; Gannaway v. Standard Acc. Ins. Co., 10 Cir., 85 F.2d 144, 145; McCann v. Supreme Tribe of Ben Hur, 171 Ark. 614, 285 S.W. 361.

■ The Supreme Court of Arkansas has recognized the right of insurers and insureds to provide, in their policy contracts, the terms and conditions upon which the contracts may be reinstated. American Nat. Ins. Co. v. Otis, 122 Ark. 219, 183 S.W. 183, L.R.A.1916E, 875; National Americans v. Howell, 136 Ark. 355, 206 S. W. 670; McCann v. Supreme Tribe of. Ben Hur, 171 Ark. 614, 285 S.W. 361.

The cases cited by the appellant, Calvin v. United States Mut. Acc. Ass'n, 66 Hun 543, 21 N.Y.S. 734, Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3, Parker v. California State Life Ins. Co., 85 Utah 595, 40 P.2d 175, are not helpful because they are all readily distinguishable from this case. They are cases in which the courts ruled that, by the terms of the policies in suit, or by the terms of offers to

reinstate made by the insurers, the deposit of past due premiums in the mail effected reinstatement.

■ The appellant contends that the communications sent by the insurer to the insured, calling attention to the lapse of his policy and urging him to send in the past due premium and to reinstate his insurance, amounted to offers to reinstate the policy as soon as the premium was deposited in the mail. We think that these communications are not reasonably susceptible of such a construction. In any event, the insured did not so interpret them, since he applied for reinstatement in accordance with the terms of his policy. Compare McCann v. Supreme Tribe of Ben Hur, 171 Ark. 614, 285 S.W. 361, 363. The insurer may have designated the United States Post Office Department to receive premiums and transmit them, but it had not authorized that Department to act for it in determining whether past due premiums and applications for reinstatement should be accepted.

■ ■ The appellant's contention that the insurer, by depositing on December 23, 1940, the insured's check for his past due premium, and by not unconditionally tendering to the appellant a return of the premium payment, waived the right to deny liability, we regard as untenable. The check was sent to the insurer for the purpose of effecting a reinstatement of the policy to cover accidental death occurring after the check and reinstatement application had been received and accepted by the insurer. Therefore, the receipt and acceptance of the check could not be treated as indicative of an intention on the part of the insurer to treat the policy as reinstated prior to December 23, 1940. In addition, the evidence clearly showed that, at the time the insurer accepted the check, it was without knowledge of the insured's death, and that, when informed of his death, it immediately notified the appellant that the policy was not in force at the time that death occurred, and that she was entitled to the return of the premium. It is apparent, also, that a tender of this premium payment to the appellant would have been futile, since she was contending that the payment of the premium had effected a reinstatement of the policy as of December 21, 1940. "A tender is not required where it is evident that it will not be accepted." Dickinson v. Atkins, 132 Ark. 84, 200 S. W. 817, 820. See, also, McCann v. Su-

preme Tribe of Ben Hur, 171 Ark. 614, 285 S.W. 361, 363; Capital Fire Ins. Co. v. Shearwood, 87 Ark. 326, 112 S.W. 878; Home Fire Ins. Co. v. Wilson, 109 Ark. 324, 159 S.W. 1113, 1115; Sperr v. East & West Ins. Co., 199 Ark. 600, 135 S.W. 2d 327, 329.

The court below was of the opinion that the payment mailed by the appellant on February 26, 1941, in response to a premium notice addressed to the insured by the home office of the insurer, could be accorded no significance, and we agree. The sending of that notice was obviously a mistake of the home office of the insurer and based upon the assumption that the insured was alive. In no event could the sending of the notice and the acceptance of the appellant's check by the insurer be regarded as evidence that it intended to treat the policy in suit as having been in force on the date of the insured's death. No premium was due upon the policy after the insured died, regardless of whether or not the policy had been reinstated on December 21, 1940. Compare Patterson v. Equitable Life Assur. Society, 112 Ark. 171, 165 S.W. 454, 456.

In its answer, the insurer tendered the return of the reinstatement premium and of the premium paid later by the appellant, which tender, for obvious reasons, was refused by the appellant.

The contention that the insurer, by its letters relative to completing its investigation and to discussing the appellant's claim in an effort to reach an adjustment of the controversy without litigation, had estopped itself from contesting its liability or had waived its right to defend, is clearly without merit. Compare National Aid Life Ass'n v. Holland, 199 Ark. 790, 136 S.W.2d 175, 179, 180, and American Nat. Ins. Co. v. Otis, 122 Ark. 219, 183 S.W. 183, L.R.A. 1916E, 875. Nothing was done or said by the insurer, after the death of the insured, evidencing any intention on its part to relinquish its right to assert that the policy was not in force at the time of the insured's death. The insurer made no misrepresentation upon which the appellant relied to her prejudice. It is not conceivable to us that an insurer, after having denied the validity of a claim, could thereafter, by expressing a willingness to consider or to discuss the claim or to negotiate for its settlement, waive its right to defend or estop itself from asserting nonliability. If the letters upon which the appellant relies to create an estoppel had never been written, she might have commenced her action sooner than she did, but there is nothing to show that she was harmed by any delay occasioned by the letters, and, clearly, she was not.

It is our conclusion that it appears from the evidence in this case, as a matter of law, that, at the time of the insured's death, his lapsed policy had not been reinstated. The trial court properly directed a verdict for the insurer.

The judgment is affirmed.