Joseph A. Gentry et al *v.* E. J. Holland et ux

5-4278                                    419 S. W. 2d 130

Opinion delivered October 9, 1967

[Rehearing denied October 30, 1967]

*John W. Cloer, Walter Niblock* and *R. L. Womack*, for appellants.

*Charles W. Atkinson,* for appellee.

Lyle Brown, Justice. This suit was originated by E. J. Holland, appellee here, to quiet title in 111 acres of land in Madison County. The principal cloud on his title arose as a result of a prior executed lease covering forty acres. That lease has been in the hands of several parties, a number of whom here claim rights still subsist in them. Their claims were adverse to Holland and also as between themselves. The trial court declared the lease had been cancelled for default in monthly rental payments. Various counterclaims and cross-claims growing out of the operations under the lease were litigated and appeals have been taken from those findings. Ap-

pellants are John E. Yarbro, War Eagle Lime Co., Inc., and Joseph A. Gentry.

The forty-acre tract which was leased contained substantial limestone deposits. In 1952 Harwood and Will obtained a nineteen-year lease for the purpose of removing limestone and processing it at a quarry to be located on the lands. The fee owner was to receive five cents per ton for the products processed at the quarry, with this additional provision:

"And if . . . the royalty payable to lessor be less than an average of $25.00 per month for a period of 3 consecutive calendar months, then lessee must nevertheless begin paying lessor $25.00 per month minimum, and if this stipulation is not fulfilled then lessor may on 30 days written notice to lessee cancel this lease agreement and lessee be required to remove his property from the premises."

In 1959 appellant Joseph A. Gentry came into possession of the lease by assignment. He was also assigned "the good will and name of the War Eagle Lime Company." Within a few weeks Gentry assigned the lease to appellant John E. Yarbro. Gentry and Yarbro simultaneously executed a sale and purchase agreement. By that instrument Yarbro became the owner of the business operated under the name of War Eagle Lime Company. Gentry retained a lien on the lease and all the operating equipment to secure the installment payments.

Yarbro apparently incorporated the lime company under the name of War Eagle Lime Company, Inc. This was done within three months after the Gentry to Yarbro transaction. Yarbro transferred his interest to the corporation "subject to the contract of sale and purchase" between Gentry and Yarbro.

Yarbro operated the company from 1959 until late in 1963, paying the mining royalties to the fee owner, Berry Denney, until December 1963. At that time Yarbro

entered into an agreement with Denney to buy the forty leased acres on which War Eagle's operation was located. An escrow agreement was executed. Yarbro agreed to make a cash payment of $10,000, half of the purchase price, and agreed to pay the balance on or before June 2, 1964. Appellee E. J. Holland actually advanced the down payment for Yarbro. The payment was delivered to Denney. The escrow agreement, contract of sale, and warranty deed, Denney to Yarbro, were held by the escrow agent, First National Bank of Huntsville.

Shortly after the escrow deposit, Yarbro advised his benefactor and employee, Holland, that Yarbro would not be able to raise the purchase price. Appellee Holland testified that in order to protect his advancement, he agreed with Yarbro to buy the acreage. On December 23, 1963, which was ten days after the Denney-Yarbro transaction, Yarbro executed a warranty deed to Holland. The latter was aware of the outstanding mining lease and the escrow transaction. Holland either held his deed or left it with the Bank. On May 22, 1964, Holland and Denney went to the Bank. There Holland paid the balance of the purchase price, borrowing the money from the Bank. Forthwith three instruments were simultaneously recorded under the Bank's direction. These were the Denney-to-Yarbro deed, the Yarbro-to-Holland deed, and Holland's mortgage to the Bank.

Yarbro operated the business from 1959 to late in 1963. By that time War Eagle was heavily indebted. There was no production during the first few months of 1964. During that interim Holland was trying to raise capital to purchase new machinery which would be used in making new products. That endeavor was not successful. At this point Yarbro, acting in the name of the corporation, conveyed all rock and other merchandise on hand to Holland. Appellants claim Holland was to retain $2,910 owed him by War Eagle and to return the balance to the Company. Holland claimed $6,554.15 was due him for wages, commissions, and expenses.

We have summarized the salient facts touching on the status of the lease. For purposes of clarity we shall here digress from the many other contentions and discuss our holding with respect to the lease.

If the lease was extinguished it was because no royalty or rental payments were made during the escrow period, that being from December 2, 1963, until May 22, 1964. On May 10, 1964, Yarbro tendered the April payment (the twenty-five dollar minimum) to Holland. It was refused. Yarbro testified that for several months thereafter he made continuous tenders. There is little dispute about those tenders. All were refused. Gentry sued Yarbro and on June 9, 1965, a judgment was entered in that case in the Madison Chancery Court. All rights of Yarbro in and to the lease were cancelled. The personal property was ordered sold to apply on Gentry's judgment. Then on June 10, 1965, by money order to Holland, Gentry tried to make the rental payment due on that day.

If the lease was still in effect when Holland took the deeds out of escrow, the recited tenders were sufficient to keep the lease in effect. Continuous and unbroken tenders are unnecessary when it is evident they will not be accepted. *Holloway* v. *Buck*, 174 Ark. 497, 296 S. W. 74 (1927); *Taylor* v. *Mutual Ben. Health & Accident Ass'n.*, 133 F. 2d 279 (1943).

Holland's title did not vest until May 22, 1964. He made the down payment with full knowledge that the Denney-to-Yarbro deed would not be released until the balance of the purchase price was paid. And Holland agreed to, and did, timely pay the balance. Unquestionably, Holland knew he had no title until Denney was paid. The chancellor took the view that Holland's rights vested when the Yarbro-to-Holland deed was executed. The trial court also held that the tender of royalty payments was ineffective, theorizing that those payments could not be forced upon Holland. In these two respects the trial court erred.

During the escrow period title remained in the grantor, Denney. No waiver of rental payments was recited in the sales contract. Denney's conveyance was on a condition, namely, payment of the full purchase price. *Mansfield Lumber Co.* v. *Gravette,* 177 Ark. 315, S. W. 2d 726 (1928). Therefore Holland's right to rents did not vest until his title vested. The right to rents was in Denney, but in this case he makes no demand. In fact he testified he did not expect any rents after he conveyed to Yarbro. This was perhaps due to Denney not knowing he had a legal right to them. Further, it would not be reasonable to presume that Denney intended to give Holland an absolute right to rental payments when Denney had only a contingent possibility of consummating the sale.

It is our conclusion that the bare lease is in force and the leasehold interest is vested in Gentry. We now consider the remaining contentions.

Yarbro and War Eagle Lime Co., Inc. raise these points in their combined brief:

Point 1. *The court should have vested title to the lease in these appellants.* Yarbro conveyed the lease to War Eagle subject to the lien in favor of Gentry. The Madison Chancery Court, in an action separate from the one before us, determined that Gentry was entitled to be reinvested with that which he conveyed to Yarbro. This point is therefore without merit.

Point 2. *The court erred in dismissing these appellants' prayer for an accounting and judgment against Holland.* In that connection, these appellants argue the property was placed in trust with Holland. They contend Holland sold large quantities of raw materials and should account to them. On conflicting testimony the court held that no such trust had been created and that Holland was not so indebted. We affirm those findings.

Point 3. *The court should not have cancelled the lease as to War Eagle Lime Co., Inc. because the notice to vacate which was purportedly served on War Eagle was ineffective.* This is without merit. According to the sheriff's certificate, a notice was served "on War Eagle Lime Company and John E. Yarbro by delivering a copy of the same to him individually and as President of said Corporation and stating the substance thereof this 27 day of June, 1964." Below the signature of the sheriff appears handwriting indicating that a copy may have been delivered to Yarbro's wife. The sheriff was not called to testify. The handwriting is unsigned. If a copy was delivered to Mrs. Yarbro, we can but assume that was a copy in addition to the copy delivered to John E. Yarbro.

Aside from the lease, Gentry made two other contentions. He sought an accounting from Yarbro and that was denied. The simple answer is that Gentry proceeded against Yarbro in a separate action and was awarded judgment against Yarbro. In that action he foreclosed his lien on the lease and fixtures for the purchase price. If he did not there include a claim for other items involved in the same transaction, he is too late.

Finally, Gentry classifies himself as a creditor of War Eagle Lime Co., Inc. He seeks judgment against Holland because Gentry had no notice of the execution of the bill of sale from Yarbro to Holland. That instrument, dated March 3, 1964, transferred the stockpile of filter rock, concrete aggregate, chips, and lime to Holland. Those items were the property of War Eagle Lime Co., Inc. Gentry was not a creditor of that corporation; he was a creditor of Yarbro.

We affirm the trial court's findings in all respects except as to the lease in question, title to that instrument being vested in Gentry.